***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and oral arguments of the parties. With reference to the errors assigned, the Full Commission finds that defendants have not shown good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives. Accordingly, the Full Commission AFFIRMS with minor modifications, the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 *********** ISSUES TO BE DETERMINED
1. Whether defendants' Industrial Commission Form 24 Application filed on June 20, 2008 should have been approved.
2. Whether plaintiff has unjustifiably refused suitable employment barring her from further benefits pursuant to N.C. Gen. Stat. § 97-32.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing, and in a Pre-Trial Agreement which was admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS *Page 2 1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over this matter.
 2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
 3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
 4. Insurance coverage existed on the date of injury.
 5. Plaintiff sustained a compensable left calf strain on May 7, 2008.
 6. An employment relationship existed between plaintiff-employee and defendant-employer during some or all of the time period in question.
 7. Plaintiff's average weekly wage is $1403.48.
 8. Plaintiff has been paid temporary total disability compensation in the amount of $786.00 per week since May 8, 2008, and continuing.
 9. At the hearing, the parties submitted the following: *Page 3 
 a. A Pre-Trial Agreement which was admitted into the record and marked as Stipulated Exhibit (1) and;
 b. A Packet of Industrial Commission Forms, which was admitted into the record and marked as Stipulated Exhibit (2);
 c. The Transcript of Plaintiff's Recorded Statement, which was admitted into the record and marked as Stipulated Exhibit (3);
 d. Plaintiff's Response to Defendants' First Set of Interrogatories, which was admitted into the record and marked as Stipulated Exhibit (4);
 e. Defendants' Response to Plaintiff's First Set of Interrogatories, which was admitted into the record and marked as Stipulated Exhibit (5);
 f. Plaintiff's Employment File which was admitted into the record and marked as Stipulated Exhibit (6) and;
 g. A Packet of Medical Records which was admitted into the record and marked as Stipulated Exhibit (7).
 10. Also made part of the record were the depositions of Dr. Thomas Florian; Dr. Staley Jackson, Dr. David Allen and Annette Melvin, PNP-C.
 ***********
Based upon a review of all the credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-four (44) years of age. Plaintiff has an associate's degree in nursing and began working for defendant-employer as a staff registered nurse in 2001. *Page 4 
2. On May 7, 2008, plaintiff was asked to help transport a patient for an emergency abdominal CT scan when regular transport personnel were unavailable. As plaintiff was hurriedly pushing the roller bed up an incline to the x-ray department, she braced her body and heard a pop in her left leg. Plaintiff immediately experienced sharp pain in her left calf muscle area.
3. Plaintiff then informed the charge nurses that she had injured her leg and would probably not be at work the following day. Next, plaintiff left work and returned home. Plaintiff testified that not only did she experience sharp pain in her calf but also that her knee became stiff and sore both in the back and on the side.
4. Plaintiff testified that prior to May 7, 2008 she never had any problems with her left leg.
5. Defendants accepted plaintiff's left calf injury as compensable with the filing of an Industrial Commission Form 60 dated June 19, 2008.
6. The day following her injury, on May 8, 2008, plaintiff submitted an "Employee Occurrence Report" to defendant-employer and sought treatment at Southeastern Occupational Health Works. At that facility plaintiff was treated by Annette Melvin, a certified family nurse practitioner. Although Nurse Practitioner Melvin's notes only reflect a diagnosis of "pain in limb, left lower leg," plaintiff testified and the Full Commission finds as fact that she told Nurse Practitioner Melvin that her left calf muscle and the area behind her left knee on the side were also hurting. Because plaintiff had a sign of a deep vein thrombosis, Nurse Practitioner Melvin ordered a venous Doppler ultrasound, which was negative. Additionally, Nurse Practitioner Melvin medically excused plaintiff from work pending a reevaluation and advised her to use crutches, elevate her leg and to take ibuprofen for pain and stiffness. *Page 5 
7. On May 12, 2009, plaintiff returned to Nurse Practitioner Melvin. Plaintiff testified that on that date, she reported experiencing pain in her left calf and the side behind her left knee. However, Nurse Practitioner Melvin's notes do not reflect plaintiff's reports of left knee pain and she testified that plaintiff made no such complaints. Plaintiff's testimony is accepted as credible. Nurse Practitioner Melvin's examination of plaintiff did reveal that movement of plaintiff's foot caused pain in the lower leg and that her range of motion was decreased due to pain with limited dorsiflexion. Nurse Practitioner Melvin further noted that there was tenderness of the medial gastrocnemius without indentation. The gastrocnemius is a muscle in the back part of the lower leg that runs from just above the knee to the heel. Because of the possibility of a tear of the gastrocnemius muscle in the left calf, Nurse Practitioner Melvin arranged for plaintiff to be examined by her supervising physician, Dr. Florian, a rehabilitation and pain management specialist.
8. On May 13, 2008, plaintiff was examined by Dr. Thomas Florian and reported the mechanism of her injury and that it resulted in her experiencing sharp pain on the middle side of her left lower leg. Although plaintiff testified that she also reported problems with her left calf, knee and leg pain, Dr. Florian's records do not reference such a report. Dr. Florian diagnosed plaintiff as having a partial tear of the medial gastrocnemius, placed her in a left walker boot and continued her out of work status.
9. On May 16, 2008, plaintiff sought additional treatment from Dr. Joseph Roberts, a general practitioner, with whom she had scheduled an appointment prior to her injury. Dr. Roberts noted that plaintiff was experiencing left hip and left knee stiffness and tenderness, right knee pain and tenderness, lower extremity muscle pain and left shoulder pain and stiffness. For these symptoms, Dr. Roberts prescribed Celebrex and Darvocet. *Page 6 
10. On May 18, 2008, plaintiff gave a recorded statement to defendant-carrier in which she did not specifically refer to experiencing left knee pain. Nonetheless, plaintiff testified that she continued to experience such pain and considered calling the adjuster to clarify her statement.
11. On May 20, 2008, plaintiff returned to Nurse Practitioner Melvin. Plaintiff testified that she reported continued left leg and knee pain. However, as before, Nurse Practitioner Melvin's notes do not reference a report of left knee symptoms. This was plaintiff's final appointment with Nurse Practitioner Melvin, who thereafter referred plaintiff to Dr. Staley Jackson, an orthopedic surgeon, for her partial gastrocnemius tear to her left calf. Additionally, Nurse Practitioner Melvin continued plaintiff's out of work status.
12. On May 27, 2008, plaintiff was examined by Dr. Jackson, who testified that plaintiff reported the mechanism of her work place injury. Plaintiff testified that as of the date of this appointment, she was experiencing left calf, left knee and left ankle pain and that if she stood for more than fifteen (15) minutes, she would experience pain through her thigh and across her back, requiring her to sit. However, Dr. Jackson testified that the only area about which plaintiff complained was her left calf. Dr. Jackson noted that plaintiff was experiencing left calf pain with dorsoflexion of the left foot and diagnosed a left calf muscle strain. For this condition, Dr. Jackson recommended stretching exercises and the use of anti-inflammatory medications.
13. On June 10, 2008, plaintiff returned to Dr. Jackson. Plaintiff testified that on that date she reported continuing to experience left calf, knee and ankle pain. Dr. Jackson noted that plaintiff presented with an antalgic gait, which appeared to be "contrived." Upon examination, Dr. Jackson could forcibly dorsaflex plaintiff's foot without discomfort and she was able to walk with full weight bearing on both her legs without observable signs of pain. Following his *Page 7 
examination, Dr. Jackson opined that plaintiff's left leg had healed and released her to return to work with no work restrictions. At his deposition, Dr. Jackson testified that plaintiff did not complain of knee pain and consequently, he never examined her knee.
14. On June 20, 2008, defendants filed an Industrial Commission Form 24 Application to Terminate or Suspend Payment of Compensation based on Dr. Jackson's release of plaintiff to unrestricted work. On July 25, 2008, the Industrial Commission denied defendants' application on the basis that the medical documentation was contradictory regarding plaintiff's ability to return to work and there was also no documentation that defendant-employer had suitable work available for plaintiff.
15. The day after she was examined by Dr. Jackson, on June 11, 2008, plaintiff returned to Dr. Roberts because, as she testified, she needed to see a doctor who believed that she was actually experiencing knee pain. The Full Commission finds plaintiff's action in this regard to be reasonable. Dr. Roberts noted that plaintiff was experiencing pain radiating from her left calf up to her hip. Dr. Roberts diagnosed plaintiff as having a "sprain/strain of knee/leg unspecified" and referred her to Dr. David Allen, an orthopedic surgeon.
16. On June 12, 2008, plaintiff presented to Dr. David Allen, and reported experiencing left knee and left leg pain related to her workplace injury as well as the fact that her knee periodically would give way. Plaintiff also reported that she experienced pain in her left shoulder and left hip and that she had been evaluated by another physician but had not obtained relief. This appointment with Dr. Allen had not been authorized by defendants. Dr. Allen recommended an x-ray for plaintiff's shoulder, physical therapy for her left ankle and knee, prescribed an anti-inflammatory and restricted her to one hour of standing or walking. At his *Page 8 
deposition, Dr. Allen testified that at the time of this initial evaluation, he was primarily focused on treating plaintiff's left calf.
17. Plaintiff continued to treat with Dr. Allen for her left shoulder, left knee and left leg conditions through September 2008. On July 3, 2008, Dr. Allen fitted plaintiff with a hinged knee brace. Additionally, Dr. Allen continued plaintiff's physical therapy and her work restriction of being limited to one hour of standing or walking.
18. On July 17, 2008, plaintiff returned to Dr. Allen and reported continued left knee and left ankle pain. Since Dr. Allen opined that plaintiff's left knee pain failed to improve, he recommended a knee arthroscopy. On July 31, 2008, Dr. Allen ordered an MRI of the left knee to rule out meniscal pathology and continued plaintiff's work restrictions of no standing for more than one hour per day.
19. The MRI of plaintiff's left knee revealed mild lateral collateral ligament strain and some thinning of the cartilaginous surfaces, which was non-specific.
20. At the time of plaintiff's August 28, 2008 appointment with Dr. Allen, her left shoulder, left hip and left ankle symptoms had resolved. However, Dr. Allen noted that plaintiff continued to experience left knee stiffness and medial and lateral joint line pain. Dr. Allen opined that plaintiff had a left lateral collateral ligament sprain and a left gastrocnemius strain. Dr. Allen prescribed Percocet for pain, continued plaintiff's work restriction of no standing for more than one hour and again recommended a left knee arthroscopy.
21. On September 10, 2008, Dr. Allen performed a left knee synovectomy, medial and lateral compartment, which revealed some inflamed tissue along the medial and lateral compartments which were resected. The ACL and PCL ligaments were intact as was the medial meniscus. In addition, there was some evidence of chondromalacia. *Page 9 
22. Dr. Allen completed a questionnaire on October 17, 2008, wherein he indicated that plaintiff's left knee injury was caused by her admittedly compensable injury by accident of May 7, 2008. Additionally, Dr. Allen testified within a reasonable degree of medical certainty, and the Full Commission finds as fact, that plaintiff's left knee synovitis was related to her admittedly compensable injury by accident of May 7, 2008.
23. Plaintiff's last visit with Dr. Allen was on September 25, 2008, at which time he continued her work restrictions of no standing for more than one hour. Dr. Allen has not assessed plaintiff to be at maximum medical improvement.
24. The medical opinions related to whether the knee pain plaintiff experienced was related to her May 7, 2008 injury are contrary. Nurse Practitioner Melvin, who treated plaintiff on May 8, 2008, May 12, 2008 and May 20, 2008, diagnosed plaintiff with "pain in limb, left lower leg" but testified that plaintiff never specifically complained of left knee pain. Dr. Florian, who examined plaintiff on only one occasion, testified that had plaintiff injured her knee on May 7, 2008, he would have expected her to have had immediate knee pain complaints. Dr. Jackson, who examined plaintiff on two occasions, testified that plaintiff did not specifically complain of knee pain and if she had injured her knee during the May 7, 2008 accident, he would have expected her to exhibit symptoms when she presented to him on May 27, 2008. Additionally, Dr. Jackson testified that he would defer to the causation opinions of Dr. Allen regarding plaintiff's left knee.
25. Dr. Allen testified to a reasonable degree of medical certainty that the left knee conditions for which he treated plaintiff were related to her admittedly compensable injury by accident of May 7, 2008. *Page 10 
26. In response to the lack of reference to a knee injury in the medical notes and several reports, including plaintiff's requests for leave of absence, Dr. Allen testified that neither Nurse Practitioner Melvin nor Dr. Jackson had examined plaintiff's left knee in the course of their evaluation; therefore, there was no documentation of the extremity for comparison. Dr. Allen testified that when a patient presents with leg or calf pain, the first concern is whether there is a blood clot in the leg that could lead to a pulmonary embolism. The next concern would be a gastrocnemius or an Achilles tendon disruption and these were the concerns of the prior medical care providers. Furthermore, Dr. Allen indicated that he was not concerned about the lack of a reference to a knee injury by the prior doctors and Nurse Practitioner Melvin because there was a recorded complaint of plaintiff's knee pain only nine days after her injury in the notes of Dr. Roberts on May 16, 2008 and approximately one month later on June 12, 2008, plaintiff presented to Dr. Allen with left knee complaints.
27. Based upon the totality of the credible evidence of record, the Full Commission gives greater weight to the testimony and opinions of Dr. Allen than to those of the other medical professionals who testified in this matter. Dr. Allen, a board certified orthopedic surgeon, treated plaintiff on an ongoing basis, conducted more extensive examinations and performed plaintiff's left knee surgery and was, therefore, in a better position to determine whether plaintiff's knee conditions were related to her admittedly compensable injury by accident of May 7, 2008.
28. As of September 25, 2008, plaintiff remained medically excused from all work pursuant to Dr. Allen's recommendations and opinion. To date, plaintiff has not returned to work. As Dr. Allen had not released plaintiff to return to work as of the close of the record due to her leg and knee work related injury, the Full Commission finds plaintiff's ongoing disability to be related to her May 7, 2008 work accident. *Page 11 
29. The left knee conditions for which Dr. Allen treated plaintiff, including her surgery, were the direct and natural result of and causally related to her admittedly compensable injury by accident of May 7, 2008.
30. Based upon the greater weight of the credible medical and vocational evidence of record, as the result of her admittedly compensable injury by accident of May 7, 2008 and her causally related left knee conditions and related surgery, plaintiff has been unable to earn any wages in her former position with defendant-employer or in any other employment for the period of March 8, 2008 through the present and continuing.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On May 7, 2008, plaintiff sustained an injury by accident to her left calf and left knee arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. The left knee conditions for which Dr. Allen treated plaintiff, including her surgery, were the direct and natural result of, and causally related to her admittedly compensable injury by accident of May 7, 2008. Id.; Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003).
3. Plaintiff has proven by the greater weight of the credible medical and vocational evidence that, as the result of her compensable injury by accident of May 7, 2008 and her causally related left knee conditions and related surgery, she is entitled to be paid by defendants ongoing total disability compensation at the rate of $786.00 per week for the period of May 8, 2008 *Page 12 
through the present and continuing until such time as she returns to suitable employment or further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. As the result of her admittedly compensable injury by accident of May 7, 2008, and her causally related left knee conditions and related surgery, plaintiff is entitled to have defendants pay for all reasonably related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including the expenses associated with her left knee surgery and other treatment provided and ordered by Dr. Allen, when bills for the same have been processed pursuant to procedures established by the Industrial Commission. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based on the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $786.00 per week for the period of May 8, 2008 through the present and continuing until such time as she returns to suitable employment or further Order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject the attorney's fee approved herein.
2. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as the result of her admittedly compensable injury by accident of May 7, 2008 and her causally related left knee conditions and related surgery, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including the expenses associated with her left knee surgery and other treatment *Page 13 
provided and ordered by Dr. Allen, when bills for the same have been processed pursuant to procedures established by the Industrial Commission.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the amounts having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check payable to plaintiff thereafter.
4. Dr. Allen is hereby approved as plaintiff's treating physician.
5. Defendants shall pay the costs.
This the ___ day of October, 2009.
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ CHRISTOPHER SCOTT COMMISSIONER